[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR STRICT FORECLOSURE
The issue before the court is whether to grant the plaintiffs motion for strict foreclosure on the property known as The Tollgate Hill Inn (the "Inn"), located at 571 Torrington Road in Litchfield, Connecticut, or to order a foreclosure by sale, and if the latter course when to order the sale. Both the plaintiff and the defendant Frederick J. Zivic have presented expert testimony before the court on these two issues. The plaintiff offered the testimony and report of Henry J. O'Brien, a licensed real estate appraiser who performed a real estate appraisal of the property for the plaintiff and valued the Inn, its furnishings and the excess real property at $1.4 million. The defendant offered the testimony of George Sherwood, also a licensed appraiser, who performed a real estate appraisal of the property in connection with efforts of the defendant Zivic to obtain mortgage financing for the property. The defendant's appraiser valued the Inn, its furnishings, fixtures and equipment, and excess real property at $2.2 million.
The two real estate appraisers who testified not only found substantially different value for the property, but used different methodologies. The plaintiffs appraiser's primary method used income and expense statements for the last six years CT Page 349 provided by Zivic and the Bank. He then applied a direct capitalization process, using a capitalization rate of eleven percent — which his report indicated is the average "going in capitalization rate" in 1999 for suburban lodging properties. The plaintiffs appraiser testified that he did not see the need to make a projection of future income and expenses because the six years of history provided an accurate picture of the property's commercial value. He valued the furnishings at $63,650, based on their separate appraisal by George Champion in April 1999. He also testified that, in addition to the 6.9 acres of land used by the Inn, the property contained three other acres, which would be suitable, based on highest and best use, as the site for one parcel of residential property, based on what he testified was R-80 zoning that requires three acres per home. He valued this excess land at $50,000.
The defendant's appraiser's primary approach was different. Using historical data as to occupancy rates, cost of lodging at the Inn and other similar properties, income generated by the restaurant located at the Inn, historical operating expenses at the Inn, comparable operating statements, and industry standards, he projected a future of increasing revenues for the Inn. For example, he indicated that the "stabilized occupancy rate" at the Inn had increased from thirty-two percent in 1992 to forty-nine percent this year. Like the plaintiffs appraiser, he also opined that property values in Litchfield County are now increasing, after a period of decline in the early to mid-1990s. Based on his own inspection of the Inn's furnishings, fixtures, and equipment, he valued them at $220,000 in depreciated value. Using an Income Capitalization Approach to value, which his report states "is typically applied by buyers and sellers of similar lodging properties," and a discounted cash flow method of income capitalization (using a 10.50 percent reversionary capitalization rate), he valued the land, furnishings, fixtures, and equipment at $1.95 million. The defendant's appraiser also valued the excess land differently from the plaintiffs appraiser. Sherwood testified for the defendant that the Inn occupied only five acres and thus there were 4.9 acres of excess land, which he valued, using a sales comparison approach for other real estate in Litchfield County with R-80 zoning, at $55,000 per acre — for a total value of the excess land of $270,000. Combining the valuations of excess property, real property used for the Inn, and the furnishings, fixtures and equipment of the Inn, the defendant's appraiser valued the Inn at $2.2 million. CT Page 350
The testimony of the two appraisers thus presents far different pictures of the value of the property being foreclosed. The court need not decide here, however, which appraisal is more accurate. Since the value of the debt owed by the defendant Zivic to the plaintiff is approximately $1.31 million, the court finds that, using either appraiser's analysis, the property's value exceeds the debt by a sufficient amount that a foreclosure by sale is necessary. Accordingly, the court denies the motion for strict foreclosure and orders a foreclosure by sale.
The plaintiffs appraiser testified that twelve months would be a reasonable period of time to list this property for sale to get the best possible price at a private sale — testimony that no party seemed to refute. There was also testimony that the property had been listed for sale already for approximately one year, but that only last August was the property listed with a real estate broker specializing in marketing "speciality" properties such as the Inn.
The plaintiff has requested that any sale be ordered by early January 2000. Zivic asked for a sale date of August 2000, a year after the property's listing with the specialty broker. Counsel for Anne Dranginis, the holder of a second mortgage owed by the defendant Zivic, asked for a sale date in January or February 2000 so that any sale would occur in time for a new owner to take the property in time for the 2000 rental season. In view of the discrepancy between the valuations of the property and the difference in methodologies, the court believes that neither a sale in winter 2000 nor in late summer 2000 would be fair to the parties with interests in this matter. Accordingly, the court orders a foreclosure by sale on Saturday, May 20, 2000, on the premises.
The court finds the proper party has sued and been sued; that the plaintiff is the mortgagee and current holder of the note; and that the total amount of the debt with interest through the date of hearing on October 25, 1999 is $1,149,368.29. The court awards counsel fees to the plaintiff in the amount of $10,000. The court further awards a title search fee of $150 and an appraisal fee of $2,000.
The court also orders the following
 • The court will select the committee. General Statutes § 49-25.
CT Page 351
 • The court asks the parties to attempt to agree to the identity of a new appraiser, other than the two who have already testified, to appraise the property for the Committee sale. The parties shall notify the clerk's office by January 31, 2000, as to whether they have agreed on an individual to serve in this capacity or have been unable to agree, in which case the court will select the appraiser.
 • The appraiser's return shall be fifteen days before the sale date.
 • The buyer must deposit ten percent of appraised value at the time of sale, the deposit to be waived if the plaintiff is the successful bidder.
 • Publication shall be made twice, one week apart, on the two weekends immediately before the sale date, in The New York Times, The Hartford Courant, and The Torrington Register-Citizen. The Committee shall inform plaintiffs counsel of the approximate cost of such advertising and plaintiff shall advance such sum to the Committee prior to the Committee contracting for such advertising.
 • A sign shall be posted on premises, at least one month prior to sale.
 • The committee is authorized to procure liability insurance for the date of the sale in the amount of $100,000/$300,000.
 • No expense is to be incurred by the committee prior to March 20, 2000.
SO ORDERED.
BY THE COURT Stephen Frazzini, Judge of the Superior Court
CASE NO. CV99-79036New England Bank VS. Frederick J. Zivic, et al
 JUDGMENT OF FORECLOSURE BY SALE (J40: CLSFBS)
DEBT: $1,149,368.29 as of Oct. 25, 1999. CT Page 352
COMMITTEE: Donna Brooks, Esq., 45 Center St., Winsted, Ct 06098
APPRAISERS: To be determined in accordance with memorandum of decision
DATE TIME OF SALE: May 20, 2000 at 12 noon
PLACE OF SALE: On premises
ADVERTISING: New York Times — weekends of May 6 13, 2000 Hartford Courant — weekends of May 6 13, 2000 Torrington Register-Citizen — May 6 13, 2000
SIGN: On premises, thirty day prior to date of sale.
DEPOSIT: $220,000 BY CASH OR CERTIFIED CHECK (waived if plaintiff)
DATE FOR RETURN OF APPRAISAL: May 5, 2000
ATTORNEY FEES: $10,000.00
ALLOWANCE TO APPRAISER: $2,000.00
INSURANCE: $100,000.00/$300,000.00 liability, date of sale
TITLE SEARCH: $150.00
* No expenses to be incurred by committee prior to March 20, 2000.
Real estate known as The Tollgate Hill Inn By: Frazzini, J.
571 Torrington Road (Route 202) Date: January 10, 2000
Litchfield, CT 06759 Entry: _______________